IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Linda Jean Hendricks, | ) | C/A No. 0:14-1896-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.).  The plaintiff, Linda Jean Hendricks, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Child's Insurance Benefits ("CIB").[1]  Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); see also

---

[1] To be entitled to CIB, the claimant must have a disability that began before reaching age twenty-two.  20 C.F.R. § 404.350(a)(5).  In this case, Hendricks had not reached the age of twenty-two by her alleged onset date.



Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider,

in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform her past relevant work; and

(5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4); see also 20 C.F.R. § 404.1520(a)(2) (providing that the five-step

sequential evaluation process applies to individuals who file an application for child's insurance

benefits based on disability).[2]  If the ALJ can make a determination that a claimant is or is not

disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return

to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie*

case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner

must establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience, and impairments, to perform alternative jobs that exist in the national

economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir.

1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050,

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In November 2010, Hendricks filed for CIB, alleging disability beginning January 1, 1992. Hendricks's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 9, 2012, at which Hendricks, who was represented by Beatrice Whitten, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on November 16, 2012 finding that Hendricks was not disabled. (Tr. 11-14.)

Hendricks was born in 1970 and had not attained the age of twenty-two as of January 1, 1992—the alleged onset date. She has a high school education and has prior work experience as a library page. (Tr. 186; see Tr. 22-24.) Hendricks alleged disability due to post-traumatic stress disorder, depression, anxiety, panic attacks, and scoliosis. (Tr. 185.)

In applying the five-step sequential process, the ALJ found that Hendricks had not engaged in substantial gainful activity since January 1, 1992—her alleged onset date. The ALJ also determined that, prior to the date Hendricks attained age twenty-two, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. Therefore, the ALJ found that Hendricks was not disabled at any time prior to March 22, 1992—the date she attained age twenty-two.

The Appeals Council denied Hendricks's request for review on March 13, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

PJG

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUE

The only issue that Hendricks raises for this judicial review is that the Administrative Law Judge's Step Two finding is not supported by substantial evidence. (Pl.'s Br., ECF No. 10.)

## DISCUSSION

In Step Two of the sequential evaluation, the claimant bears the burden of showing that she has a "severe medically determinable physical or mental impairment . . . or combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A medically determinable impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

PJG

diagnostic techniques." 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508. "A physical or mental

impairment must be established by medical evidence consisting of signs, symptoms, and laboratory

findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508 (citing § 404.1527).

"Signs, symptoms, and laboratory findings" are defined as follows:

> (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.
> (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.
> (c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. § 404.1528.

At Step Two, the ALJ found that "[p]rior to the date the claimant attained age 22, there were

no medical signs or laboratory findings to substantiate the existence of a medically determinable

impairment." (Tr. 13.) Specifically, the ALJ stated that

> [i]n terms of the claimant's alleged impairments, the record is devoid of any evidence, medical or otherwise, pertaining to the relevant time period, January 1, 1992 to March 22, 1992. As this is a claim for child's disability benefits, the claimant must establish disability before she attained the age of 22. However, because there is no evidence of record predating the claimant's 22nd birthday, I find the claimant is not disabled from January 1, 1992 to March 22, 1992.
>
> Accordingly, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.

(Tr. 14.)



Hendricks argues that the ALJ erred in determining that Hendricks had no medically determinable impairment during the relevant time period by limiting his consideration to evidence pre-dating Hendricks's twenty-second birthday.  Reading the ALJ's finding as a whole, the court disagrees with Hendricks's interpretation of the ALJ's finding, as she appears to have limited her reading to the ALJ's statement indicating that "because there is no evidence of record predating the claimant's 22nd birthday, I find the claimant is not disabled from January 1, 1992 to March 22, 1992." (Id.)  However, the ALJ also found that "the record is devoid of any evidence, medical or otherwise, pertaining to the relevant time period, January 1, 1992 to March 22, 1992." (Id.)  Thus, the ALJ indicates that he considered the entire record but found that there was no evidence in the record relating to the relevant time period.  Therefore, remand is not warranted on this basis.[3]

Upon review of the parties' arguments and the record in this matter, the court finds that Hendricks cannot demonstrate that the ALJ's finding that Hendricks failed to meet her burden to demonstrate through medical evidence the existence of a medically determinable impairment during the relevant time period is unsupported by substantial evidence or reached through application of an incorrect legal standard.  Hendricks points to evidence that she contends suggests that she had a medically determinable impairment during the relevant time period.  Specifically, Hendricks relies on two letters from a doctor in 1982 and 1983—almost ten years prior to her onset date—indicating

---

[3] Moreover, even if the ALJ did err, for the reasons that follow Hendricks has failed to establish that the error was harmful.  See Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 101 (4th Cir. 2015) (finding, in spite of the ALJ's error, reversal not warranted where it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of nondisability"); Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 67 (4th Cir. 2014) (applying the harmless error doctrine in the social security context and stating that "even assuming Chenery is applicable, any error is reviewed under the harmless error doctrine.  Thus, if the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time' ") (quoting Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010)).



that Hendricks could not bend, lift, tumble, or participate in contact sports due to scoliosis surgery and stating that Hendricks had a back condition preventing her from participating in physical education activities.[4]  (Tr. 250-51.)  Next, Hendricks points to a July 2009 letter (seventeen years after the relevant time period) from Dr. Dyana Lowndes-Rosen, a psychologist, stating that Hendricks "is certainly the victim of multi-faceted medical and emotional problems which will become clearer from an emotional standpoint as time[] goes on.  So far I am coding her from initial evaluation as Generalized Anxiety Disorder, but acknowledge her low normal IQ and possibly being somewhere in the mild Autism Spectrum Disorder as she does show some Asperger[']s type features."  (Tr. 332.)  Hendricks also directs the court to a February 2011 letter from Dr. Barry Weissglass following an examination, stating in pertinent part:

> She has had scoliosis at the age of seven and was seen by an orthopedist here who put her in a back brace.  They moved to Greenville and saw an orthopedist [there] in follow-up who recommended surgery when the brace did not work.  She had Harrington rods placed and did well.  She is generally comfortable but has marked decreased range of motion and it is difficult for her to find any sort of chair in which she can sit for more than a minute or two.  She can also not bend or twist.

(Tr. 351.) Hendricks also relies on a June 2012 evaluation by Dr. Hamid R. Bahadori, indicating that Hendricks has "Frontal lobe dysfunction, Asperger's spectrum."  (Tr. 396.)  Finally, Hendricks points to an August 2011 opinion from Dr. L. Randolph Waid, a licensed clinical psychologist, that states:

> In closing, it is evident that Ms. Hendricks is compromised in her neurocognitive, health, and social functioning.  Indeed, even though Ms. Hendricks attained a college degree, she has lifelong severe learning disabilities.  I believe Ms. Hendricks' social skill deficit and immaturity is well documented.  The best fit for her cluster of

---

[4] Hendricks also alleges that school records confirm the presence of a learning disorder without providing the court with any support for this assertion.



impairments is a Non-Verbal Learning Disability with secondary attentional/working memory deficits.

(Tr. 393.)

Although one record mentions lifelong learning disabilities, these records—which were created approximately ten years prior to her onset date or seventeen years or more after the end of the relevant time period—are insufficient to support a finding of a medically determinable impairment "demonstrable by medically acceptable clinical and laboratory diagnostic techniques" or "established by medical evidence consisting of signs, symptoms, and laboratory findings" during the relevant time period.  42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508.  Thus, Hendricks has failed to demonstrate that the ALJ's determination that she did not meet her burden at Step Two by failing to demonstrate the existence of a medically determinable impairment from January 1, 1992 to March 22, 1992 was unsupported by substantial evidence.

### RECOMMENDATION

For the foregoing reasons, the court finds that Hendricks has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 26, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).