UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Linda Jean Hendricks, ) | Civil Action No.: 0:14-cv-01896-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court following the issuance of a Report and Recommendation ("R&R") of United States Magistrate Judge Paige J. Gossett.[1] Plaintiff, Linda Jean Hendricks, brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commission of Social Security ("the Commissioner") denying Plaintiff's claims for Child's Insurance Benefits ("CIB").[2] The Magistrate Judge recommended affirming the Commissioner's decision denying Plaintiff's claim for benefits.

**FACTUAL FINDINGS AND PROCEDURAL HISTORY**

Plaintiff applied for CIB on November 3, 2010, alleging disability as of January 1, 1992. The applications were denied initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). A hearing was held before the ALJ on August 9, 2012. Plaintiff, represented by counsel, appeared and testified. A vocational expert also testified. The

---

[1] This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2).

[2] To be entitled to CIB, the claimant must have a disability that began before the Claimant reaches age twenty-two. 20 C.F.R. § 404.350(a)(5). In this case, Plaintiff alleged that her disability began before she reached age twenty-two.

ALJ issued a decision on November 16, 2012, finding that Hendricks was not disabled. The ALJ's findings are as follows:

    1.    Born on March 23, 1970, the claimant had not attained age 22 as of January 1, 1992, the alleged onset date (20 C.F.R. 404.102 and 404.350(a)(5)).

    2.    The claimant has not engaged in substantial gainful activity since January 1, 1992, the alleged onset date (20 C.F.R. 404-1571 *et seq.*).

    3.    Prior to the date the claimant attained age 22, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 C.F.R. 404.1520(c)).

    4.    The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to March 22, 1992, the date she attained age 22 (20 C.F.R. 404.350(a)(5) and 404.1520(c)).

[ALJ Decision, ECF #6-2, at 12-15].

    The ALJ's finding became the final decision of the Commission when the Appeals Council denied Plaintiff's request for further review on March 13, 2014. Plaintiff filed this action on May 12, 2014, seeking judicial review of the Commissioner's decision. [Compl., ECF #1]. Both Plaintiff and the Commissioner filed briefs, [ECF ##10, 12, 13]. The Magistrate Judge issued her Report and Recommendation ("R&R") on June 26, 2015, recommending that the Commissioner's decision be affirmed. [R&R, ECF #15]. Plaintiff filed timely objections to the R&R on July 9, 2015. [Plaintiff's Objections, ECF #16]. The Commissioner filed a response to Plaintiff's objections on July 27, 2015. [Defendant's Response to Plaintiff's Objections, ECF #17].

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Act is a limited one. The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted). This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree"). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assume that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed,

the responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. § 636(b)(1).

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.*  Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).  In that event, however, the Court must " 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## APPLICABLE LAW

Under the Act, Plaintiff's eligibility for the benefits he is seeking hinges on whether he is under a "disability." 42 U.S.C. § 423(a).  The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A).  "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985).  A claimant may establish a *prima facie* case of disability based solely upon medical evidence by

demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(a). These factors include the claimant's (1) "residual functional capacity," *id.* § 404.1560(a); (2) age, *id.* § 404.1563; (3) education, *id.* § 404.1564; (4) work experience, *id.* § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* § 404.1566. If the assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* § 404.1560(c)(1). The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether he suffers from some severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents him from returning to his previous work, and (5) whether the impairment prevents him from performing some other available work.

## ANALYSIS

The Magistrate Judge recommended affirming the ALJ's determination that Plaintiff did not meet her burden at Step Two of the five step analysis for determining disability. The ALJ found that the record was "devoid of any evidence, medical or otherwise, pertaining to the relevant time period, January 1, 1992 to March 22, 1992." [ALJ Decision, ECF #6-2, at 15]. The ALJ further found "because there is no evidence of record predating the claimant's 22nd birthday, I find the claimant is not disabled from January 1, 1992 to March 22, 1992." *Id*. The ALJ did not discuss any of the medical or other evidence that Plaintiff presented.

The Magistrate Judge, after reviewing Plaintiff's medical and other evidence, concluded that the records were "insufficient to support a finding of a medically determinable impairment 'demonstrable by medically acceptable clinical and laboratory diagnostic techniques' or established by medical evidence consisting of signs, symptoms, and laboratory findings' during the relevant time period." [R&R, ECF #15, at 8]. The Magistrate Judge found that Plaintiff failed to demonstrate that the ALJ's determination that she did not meet her burden at Step Two - by failing to demonstrate the existence of a medically determinable impairment from January 1, 1992 to March 22, 1992 - was unsupported by substantial evidence.

In her objections, Plaintiff argues that under *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012), the ALJ, when considering Step Two of the sequential evaluation, was required to give retrospective consideration to the Plaintiff's medical evidence regarding her scoliosis, learning disabilities, and a frontal lobe disorder. Plaintiff argues that the Magistrate Judge's failure to apply the *Bird* rule was error.

In Step Two of the sequential evaluation, the claimant bears the burden of showing that she

has a "severe medically determinable physical or mental impairment . . . or combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A medically determinable impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508 (citing § 404.1527).

> "Signs, symptoms, and laboratory findings" are defined as follows:
>
> > (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.
> >
> > (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.
> >
> > (c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. § 404.1528.

Plaintiff did not possess any contemporaneous medical records for the relevant time period - January 1, 1992 to March 22, 1992. The ALJ found the claimant not disabled "because there is no

evidence of record predating the claimant's 22nd birthday." [ALJ Decision, ECF #6-2, at 15]. Plaintiff offered the following evidence to establish a medically determinable impairment during the relevant time period: 1) two letters from a doctor in 1982 and 1983 indicating that Plaintiff could not bend, lift, tumble, or participate in contact sports due to scoliosis surgery and stating that Plaintiff had a back condition preventing her from participating in physical education activities (Tr. 250-51); 2) a July 2009 letter from Dr. Dyana Lowndes-Rosen, a psychologist, stating that Plaintiff "is certainly the victim of multi-faceted medical and emotional problems which will become clearer from an emotional standpoint as time[] goes on. So far I am coding her from initial evaluation as Generalized Anxiety Disorder, but acknowledge her low normal IQ and possibly being somewhere in the mild Autism Spectrum Disorder as she does show some Asperger[']s type features." (Tr. 332); 3) a February 2011 letter from Dr. Barry Weissglass following an examination, stating in pertinent part: She has had scoliosis at the age of seven and was seen by an orthopedist here who put her in a back brace. They moved to Greenville and saw an orthopedist [there] in follow-up who recommended surgery when the brace did not work. She had Harrington rods placed and did well. She is generally comfortable but has marked decreased range of motion and it is difficult for her to find any sort of chair in which she can sit for more than a minute or two. She can also not bend or twist (Tr. 351); 4) a June 2012 evaluation by Dr. Hamid R. Bahadori, indicating that Plaintiff has "Frontal lobe dysfunction, Asperger's spectrum . . . she is always going to be like this and dependent on the patient's mom for making financial decisions and also interaction with society" (Tr. 396); 5) an August 2011 opinion from Dr. L. Randolph Waid, a licensed clinical psychologist, that states: In closing, it is evident that Ms. Hendricks is compromised in her neurocognitive, health, and social functioning. Indeed, even though Ms. Hendricks attained a college degree, she has lifelong severe

learning disabilities. I believe Ms. Hendricks' social skill deficit and immaturity is well documented. The best fit for her cluster of impairments is a Non-Verbal Learning Disability with secondary attentional/working memory deficits." (Tr. 393). Plaintiff's mother also testified at the hearing that Plaintiff developed scoliosis at the age of 6 or 7 years old and suffered from cognitive deficiencies and congenital defects since birth. The ALJ's decision does not discuss any of Plaintiff's evidence.

Plaintiff argues that her conditions are congenital and lifelong and that the records link her present condition with her lifelong medical conditions, which were present during the relevant time period - January 1, 1992 to March 22, 1992 - or the date last insured (DLI). Plaintiff argues that under *Bird*, the ALJ was required to consider her post-DLI medical evidence in determining whether she had a medically determinable impairment during the relevant time period.

In *Bird*, the claimant did not have any medical records prior to his DLI which was March 31, 2005. *Bird*, 699 F.3d at 340. The first medical records in evidence were from June 2006, which detailed his visit to the Department of Veterans Affairs. *Id.* He was subsequently diagnosed with having Post Traumatic Stress Disorder ("PTSD") by several medical professionals. *Id.* The ALJ found that his impairment was insufficiently severe to qualify for benefits by relying, in part, on the lack of medical evidence created prior to the claimant's DLI. *Id.* The Fourth Circuit ruled that the ALJ should have given retrospective consideration to the post-DLI medical evidence. *Id.* at 341. The Fourth Circuit attached particular importance to the fact that a psychologist's report indicated that his PTSD had been ongoing since he had returned from Vietnam. *Id.* Further, another medical report recounted the current symptoms of PTSD and "placed Bird's symptoms in the context of his work and social histories, drawing a link between his current condition and his condition predating his

DLI." *Id.* This evidence was corroborated by Bird and his wife's recount of their experiences with his PTSD symptoms. *Id.* In this type of situation, the Fourth Circuit held that remand was required because it was an error of law to refuse to consider the properly linked post-DLI evidence. *Id.*

"Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Id*. at 340. "[E]vidence created after the claimant's DLI, which permits an inference of linkage between the claimant's post-DLI state of health and her pre-DLI condition, could be the 'most cogent proof' of a claimant's pre-DLI disability." *Id*. at 341. "[R]etrospective consideration of evidence is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms." *Id*. Further, "retrospective consideration of medical evidence is especially appropriate when corroborated by lay evidence." *Id*.

Here, the ALJ failed to consider or assign and explain any weight to any of the Plaintiff's post-DLI evidence simply because it did not "predate the claimant's 22nd birthday." Plaintiff's post-DLI medical records show that Plaintiff suffers from several congenital health issues, i.e. scoliosis, learning disabilities, and a frontal lobe disorder. This evidence was corroborated by lay testimony. Under those circumstances, the record is not so persuasive as to rule out any linkage between Plaintiff's current condition and her condition during the relevant time period. In her recommendation affirming the ALJ, the Magistrate Judge improperly weighed evidence that the ALJ did not even consider. *See* [R&R, ECF #15, at 8] (stating "these records . . .are insufficient to support a finding of a medically determinable impairment 'demonstrable by medically acceptable clinical and laboratory diagnostic techniques' or 'established by medical evidence consisting of

signs, symptoms, and laboratory findings' during the relevant time period"). Under *Bird*, the ALJ's failure to give retrospective consideration to Plaintiff's post-DLI medical evidence was an error of law. *See id.* at 342. The ALJ's determination that Plaintiff did not suffer from a severe medically determinable physical or mental impairment during the relevant time period is not supported by substantial evidence. This case is due to be remanded with instructions that the ALJ give retrospective consideration to Plaintiff's post-DLI medical evidence.[3]

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the transcript, the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, Defendant's reply to the objections, and applicable law. For the foregoing reasons, the Court respectfully rejects the R&R of the Magistrate Judge. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and the case is **REMANDED** to the Commissioner for further proceedings as set forth herein.

**IT IS SO ORDERED**.

August 14, 2015  
Florence, South Carolina

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

---

[3] The Court notes that the Fourth Circuit's opinion in *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012), was issued on November 9, 2012, only one week before the ALJ's decision on November 16, 2012.